Argued August 24, affirmed October 4, reconsideration denied
October 27, petition for review denied December 7, 1976

In the Matter of Kittey Ann Moser, a Child.
STATE EX REL JUVENILE DEPARTMENT OF
CLACKAMAS COUNTY AND KITTEY ANN
MOSER, A CHILD, *Respondents,*
*v.*
MADISON, *Appellant.*
(No. 8654, CA 5476)
554 P2d 1022

*Raymond R. Bagley, Jr.,* Oregon City, argued the
cause for appellant. With him on the brief was Jack,
Goodwin & Urbigkeit, Oregon City.

[ 31 ]

■■■■■■■■■

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent Juvenile Department. On the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Karen H. Green, Certified Law Student, Salem.

No appearance by respondent Kittey Ann Moser.

Before Schwab, Chief Judge, and Fort, Judge, and Sloan, Senior Judge.

■■■■■■

SLOAN, S. J.

## SLOAN, S. J.

The trial court entered an order terminating the parental rights of appellant, Teresa Moser Madison, the mother of the infant child, Kittey Ann Moser. The father is unknown. Teresa Madison appeals.

At the trial a psychologist was permitted to testify over an objection that the psychologist's testimony violated the statutory psychologist-client privilege. The appellant claims that the trial court erred in permitting the psychologist to testify.

■ The person asserting the privilege has the burden to show "that both the one asserting a privilege and the nature of the testimony offered are within the ambit of the statute according the privilege * * *." *Groff v. S.I.A.C.,* 246 Or 557, 565, 426 P2d 738 (1967). *State ex rel Juv. Dept. v. Brown,* 19 Or App 427, 434, 528 P2d 569 (1974), Sup Ct *review denied, cert denied* 421 US 1003 (1975).

The statutory privilege, ORS 44.040(1)(h), provides:

"A licensed psychologist, as defined in ORS 657.010, shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of his professional employment."

To decide this case it is also necessary to refer to the language of the physician-patient privilege, ORS 44.040(1)(d), which reads:

"Subject to ORS 44.610 to 44.640, a regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action, suit or proceeding, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."

Although the language of the psychologist's privilege is identical to that of the attorney-client privilege, ORS 44.040(1)(b), except for the reference to ORS 675.010, the functions of the two professions, in their relationships to their "clients," are so different it has proven futile to look to the cases defining the

[ 33 ]

attorney-client privilege as a basis for deciding who and under what circumstances one may invoke the psychologist's privilege. *Groff v. S.I.A.C., supra.* It is more helpful to look to those cases that consider when and to what extent the physician-patient privilege applies in deciding this case. We are not concerned here with the nature of the testimony offered. *Groff v. S.I.A.C., supra.*

In *State ex rel Juv. Dept. v. Martin,* 19 Or App 28, 36, 526 P2d 647 (1974), *rev'd on other grounds* 271 Or 603, 533 P2d 780 (1975), this court had occasion to say that "* * * [i]n terms of the functions and purposes of the privileges, any distinction between a licensed psychologist and a psychiatrist would seem to be a specious one."

The rule applicable to when the physician-patient privilege applies is no more succinctly stated than in *Triplett v. Bd. of Social Protection,* 19 Or App 408, 414, 528 P2d 563 (1974):

> "The physician-patient privilege created by ORS 44.040(1)(d) applies only as to 'information acquired in attending the patient, which was necessary to enable * * * [the doctor] to prescribe or act for the patient.' This language reflects the statutory policy of the physician-patient privilege that confidentiality should be protected only where vital to the attainment of the purposes for which the physician-patient relationship exists, i.e., treatment of medical problems. *See* Wigmore, *supra* at 829. Accordingly, the general rule has long been that where the doctor is consulted for the purpose of examination only, and not for treatment, no privilege exists * * *." (Citations omitted; brackets theirs.)

Applying that rule to the instant case, the privilege does not apply.

The only evidence relative to the nature of the examination of appellant by the psychologist, Dr. Russ Sardo, comes from the testimony of Dr. Sardo. Appellant did not testify at the hearing. Dr. Sardo testified that he was a paid consultant for the Clackamas County Juvenile Court and made frequent examina-

tions of this kind. He stated that in this respect he was "seeing someone for the purpose of evaluation, in which case I elicite [sic] information and send the report to the agency." Dr. Sardo testified that he had seen appellant on only one occasion, and he considered that to be for examination only, not for any treatment. In view of Dr. Sardo's testimony we agree with the trial court that the privilege did not apply. *State ex rel Juv. Dept. v. Black,* 19 Or App 493, 528 P2d 130 (1974).

The second assignment contends that the evidence is insufficient to justify a termination of parental rights. The evidence consisted of the testimony of the psychologist, Dr. Sardo, and a psychiatrist and the testimony of two social workers of the Children's Services Division. There had been numerous contacts between the latter two witnesses and appellant and the child.

■ The testimony of all of the witnesses was unequivocal that appellant suffered from "mental deficiency * * * of such duration as to render it impossible to care for the child for extended periods of time." ORS 419.523(2)(a). The evidence is convincing that this was true as to both appellant's emotional disability and her physical ability to care for the child. The evidence is also convincing that if the child were returned to appellant for any extended period of time, the child would also develop the same or similar deficiencies suffered by the mother. The factual considerations for terminating parental rights in *State v. Blum,* 1 Or App 409, 415-16, 463 P2d 367 (1970), is applicable to the evidence in the present case. That is, despite repeated efforts on the part of the social workers to salvage appellant's ability to care for her child, it is improbable that the child could be returned to appellant at any foreseeable future time without serious detriment to the child. We are persuaded that the evidence supports the trial court's decision.

Affirmed.